**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

**FILED**

**January 12, 2023**

KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Eric Greathouse, Ernesto Covarrubias, Tiffany Sumrall, Barbara Myles, Cori Pericho, John Pinkney, Joshua Smith and Alicia Mena, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>Capital Plus Financial, LLC, Crossroads Impact Corp., Eric A. Donnelly and Robert H. Alpert,<br><br>          Defendants. | Case No. 4:22-cv-686-P |

**BRIEF IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR CLASS CERTIFICATION</u>**

## <u>Table of Contents</u>

Table of Contents .................................................................................................................... i

Table of Authorities ............................................................................................................... ii

Table of Abbreviations .......................................................................................................... vi

Introduction ............................................................................................................................ 1

Factual Background ............................................................................................................... 3

Legal Standard ....................................................................................................................... 6

Argument ............................................................................................................................... 7

      I.      The Proposed Class and Subclasses are Ascertainable ................................... 7

      II.     Plaintiffs Satisfy the Requirements of Rule 23(a) ........................................ 8

      III.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3) .................................. 12

      IV.    Plaintiffs' Counsel Meet the Requirements of Rule 23(g) ........................... 21

      V.     Plaintiffs Satisfy the Additional Requirements of Local Rule 23.2 ..................... 22

Conclusion ............................................................................................................................ 25

## Table of Authorities

**Page(s)**

**Cases**

*Advance Trust & Life Escrow Services, LTA v. Security Life of Denver Ins. Co.*,
   2020 WL 8186476 (D. Colo. Apr. 13, 2020) ..........................................................................18

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
   690 F.3d 698 (5th Cir. 2012) ...........................................................................................6, 9

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) .........................................................................................15

*AM International Inc. v. Graphic Management Associates, Inc.*,
   44 F.3d 572 (7th Cir. 1995) ..............................................................................................17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................................................12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)......................................................................................................6, 12

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ...............................................................................................20

*Cathedral of Hope v. v. FedEx Corp. Servs., Inc.*,
   2008 WL 2242546 (N.D. Tex. May 30, 2008) .............................................................15, 16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ...................................................................................................18

*In re Checking Account Overdraft Litig.*,
   307 F.R.D. 630 (S.D. Fla. 2015) ........................................................................................17

*Cleven v. Mid-America Apartment Communities, Inc.*,
   328 F.R.D. 452 (W.D. Tex. 2018) .......................................................................................7

*Conrad v. Gen. Motors Acceptance Corp.*,
   283 F.R.D. 326 (N.D. Tex. 2012) ........................................................................................7

*Cox v. Spirit Airlines, Inc.*,
   2022 WL 939732 (E.D.N.Y. Mar. 3, 2022)...................................................................15, 16

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020) .........................................................................................14, 15

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
    829 F.3d 370 (5th Cir. 2016) ........................................................................7, 13

*In re Deepwater Horizon*,
    732 F.3d 326 (5th Cir. 2013) ...............................................................................16

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .................................................................................9

*In re Deepwater Horizon*,
    785 F.3d 1003 (5th Cir. 2015) .............................................................................12

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
    445 U.S. 326 (1980)..............................................................................................21

*Durrett v. John Deere Co.*,
    150 F.R.D. 555 (N.D. Tex. 1993) .........................................................................14

*Ellsworth v. U.S. Bank, N.A.*,
    2014 WL 2734953 (N.D. Cal. June 13, 2014) ..........................................15, 18, 19

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ...............................................................................11

*In re FirstPlus Fin. Grp., Inc., Sec. Litig.*,
    2002 WL 31415951 (N.D. Tex. Oct. 28, 2002).....................................................13

*Frey v. First Nat'l Bank Sw.*,
    602 F. App'x 164 (5th Cir. 2015) .......................................................................12

*In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...............................................................11

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ...............................................................................10

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) .................................................................................6

*King v. Baylor Univ.*,
    46 F.4th 344 (5th Cir. 2022) ...............................................................................16

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015).........................................................................18

*Lyn-Lea Travel Corp. v. American Airlines, Inc.*,
    283 F.3d 282 (5th Cir. 2002) ........................................................................14, 16

*M.D. v. Perry*,
    294 F.R.D. 7 (S.D. Tex. 2013) ...................................................................10

*M.D. ex rel. Stukenberg v. Perry*
    675 F.3d 832 (5th Cir. 2012) .......................................................................9

*Mitchell v. State Farm Fire & Cas. Co.*,
    954 F.3d 700 (5th Cir. 2020) .....................................................................12

*Mullen v. Treasure Chest Casino LLC*,
    186 F.3d 620 (5th Cir. 1999) ...........................................................8, 10, 11

*Overka v. Am. Airlines, Inc.*,
    265 F.R.D. 14 (D. Mass. 2010) ..................................................................18

*Page v. State Farm Life Insurance Company*,
    584 F. Supp. 3d 200 (W.D. Tex. 2022) ......................................................14

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) .....................................................................19

*Scherer v. Coney*,
    2002 WL 31412757, 114 Wash. App. 1014 (Oct. 28, 2002) ....................17

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................13

*Seeligson v. Devon Energy Prod. Co.*,
    753 F. App'x 225 (5th Cir. 2018) ................................................................7

*Steinberg v. Nationwide Mutual Insurance Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) .................................................................15

*In re TWL Corp.*,
    712 F.3d 886 (5th Cir. 2013) .....................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ..................................................................................12

*In re U.S. Foodservice Inc. Pricing Litigation*,
    729 F.3d 108 (2d Cir. 2013) ......................................................................15

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .......................................................................6

*Vine v. PLS Fin. Servs., Inc.*,
    807 F. App'x 320 (5th Cir. 2020) ..............................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................................6

*Zehentbauer Family Land, LP v. Chesapeake Exploration, L.L.C.*,
    935 F.3d 496 (6th Cir. 2019) ...........................................................................15

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. Unit A July 1981)........................................................8

**Statutes**

28 U.S.C. § 1332(d)(2) ...........................................................................................23

CARES Act .........................................................................................................1, 3

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) ..........................................23

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Fed. R. Civ. P. 26(f).........................................................................................8, 24

3 L. Cunningham and A. Jacobson, Corbin On Contracts § 542 (1998 Supp.)............16

Local Civil Rule 23.2 .................................................................................... *passim*

v

**<u>Table of Abbreviations</u>**

**CARES Act:**  Coronavirus Aid, Relief and Economic Security Act

**Defendants:**  Capital Plus Financial, LLC ("CPF"), Crossroads Impact Corp. ("Crossroads"), Eric A. Donnelly ("Donnelly") and Robert H. Alpert ("Alpert")

**Loan Documents:**  the Note, Additional and Correction Documents Agreement (Errors and Omissions Agreement), Business Purpose Statement, Notice - No Oral Agreements, Written Consent of Governing Body, IRS W-9 Request for Taxpayer Identification Number and Certification, and Information and Bank Account Certification and Authorization form (ECF No. 4)

**NCUDTPA:**  North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*)

**PPP:**  Paycheck Protection Program

**PPPLF:**  Paycheck Protection Program Liquidity Facility

**Plaintiffs:**  Eric Greathouse, Ernesto Covarrubias ("Covarrubias"), Tiffany Sumrall, Barbara Myles ("Myles"), Cori Pericho, John Pinkney, Joshua Smith ("Smith"), and Alicia Mena

**SBA:**  U.S. Small Business Administration

**SEC:**  U.S. Securities and Exchange Commission

**UCC:**  Uniform Commercial Code

**UCL:**  California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)

Plaintiffs[1] respectfully submit this brief in support of their motion for class certification.

## Introduction

Following the worldwide outbreak of COVID-19, Congress passed the CARES Act to, among other things, provide relief to America's small businesses and sole proprietors through the creation of the PPP. Administered by the SBA, the PPP was established to provide forgivable loans to businesses and sole proprietors in a quick and efficient manner using standard form loan agreement documents such as the Loan Documents that Plaintiffs and other PPP borrowers entered into with CPF. To ensure that businesses and sole proprietors received PPP loan proceeds quickly, the applicable provisions of the PPP required lenders to fund PPP loans within ten days of SBA approval. Lenders that participated in the Program were entitled to be paid fees by the SBA for each PPP loan they actually funded. Defendant CPF was one of the SBA's authorized PPP lenders, and reportedly committed to fund 472,036 PPP loans in 2021 totaling over $7.5 billion, all or the bulk of which CPF obtained from the Federal Reserve's PPPLF to fund those loans.

In disregard of its obligations to Plaintiffs and the other class member borrowers, however, CPF failed to fund those borrowers' SBA-approved PPP loans. Although the parties dispute whether the Loan Documents are binding contracts (*see* ECF No. 37 at 20-21; ECF 43 at 21-22), it is indisputable *both* that the Loan Documents are standardized and indeed identical in substance across the class, *and* that resolution of Defendants' enforceability defense raises factual and legal issues that by definition turn on common evidence. Defendants also cannot reasonably dispute that governing PPP regulations *required* PPP loan funding, CPF's obligation

---

[1]      Unless otherwise noted, all paragraph citations are to Plaintiffs' Class Action Complaint (ECF No. 1); all emphasis is added; all page cites to ECF filings are to the ECF, rather than native, page number; and all internal quotations and citations are omitted.

to use advances it obtained from the PPPLF to actually fund PPP loans, CPF's obligation to be paid loan processing fees by the SBA *only* on funded loans, and CPF's duty to report accurately to the SBA regarding PPP loan funding and lending.

Because the claims of Plaintiffs and other SBA-approved but unfunded PPP borrowers share the same core factual and legal issues and a class action is the only practical way for Plaintiffs and the class to have any opportunity to obtain relief given the relative size of their individual claims, this case is ideal for class certification. Accordingly, Plaintiffs seek certification of the following national class and two subclasses (collectively, the "Classes") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> **National Class:** All persons and entities in the United States and its territories Guam, Northern Mariana Islands, Puerto Rico and U.S. Virgin Islands who, in 2021, applied for PPP loans with defendant CPF as the lender for whom the SBA provided an SBA loan number, and who executed and submitted their Loan Documents but did not receive the PPP loan proceeds.

Plaintiffs Covarrubias and Smith seek certification of the following California Subclass:

> **California Subclass:** All persons and entities in California who, in 2021, applied for PPP loans with defendant CPF as the lender for whom the SBA provided an SBA loan number, and who executed and submitted their Loan Documents but did not receive the PPP loan proceeds.

Plaintiff Myles seeks certification of the following North Carolina Subclass:

> **North Carolina Subclass:** All persons and entities in North Carolina who, in 2021, applied for PPP loans with defendant CPF as the lender for whom the SBA provided an SBA loan number, and who executed and submitted their Loan Documents but did not receive the PPP loan proceeds.

In further support of Plaintiffs' motion for class certification, Plaintiffs are also contemporaneously filing and incorporate here an Appendix containing the parties' standard form Loan Documents (Tab 1; *accord* ECF No. 4); the experts reports of Jason D. Koontz, CRC

(Tab 2) (the "Koontz Report"), William Manger (Tab 3) (the "Manger Report"), Steven P.

Feinstein, Ph.D., CFA (Tab 4) (the "Feinstein Report"), and William Briggs (Tab 5) (the "Briggs

Report"); Plaintiffs' proposed trial plan (Tab 6) (the "Proposed Trial Plan"); the declaration of

Lawrence J. Lederer (Tab 7) (the "Lederer Decl."); declarations of Plaintiffs (Tab 8); firm

resumes of Kendall Law Group, PLLC (Tab 9), Bailey & Glasser, LLP (Tab 10), Nolan Heller

Kauffman LLP (Tab 11), and Friday, Eldredge & Clark, LLP (Tab 12); and charts identifying

and comparing the elements of Plaintiffs' contract claims (Tab 13) and unjust enrichment claims

(Tab 14) in all jurisdictions encompassed within the proposed National Class.

## **Factual Background**

As proprietors of insurance, auto repair, landscape, art, delivery, cable and housecleaning

businesses (¶¶ 17-24), Plaintiffs are among those that a widely bipartisan Congress intended the

CARES Act and the PPP to assist. ¶ 40. Defendant Crossroads is a publicly traded company; its

wholly owned subsidiary CPF is a CDFI which is supposed "to serve low-income people and

underserved communities lacking adequate access to affordable financial products and services"

(https://home.treasury.gov/news/press-releases/jy0359) (last visited Dec. 18, 2022); and

Donnelly and Alpert were at all times their two direct or indirect controlling shareholders.

Plaintiffs were approved by the SBA for PPP loans ranging from $3,750 (¶ 203) to

$20,832 (¶¶ 167, 181); entered into and are bound by the standard form Loan Documents (*see*

App'x Tab 1 (attaching the Loan Documents)) with CPF (¶¶ 117, 131, 146, 157, 169, 181, 193,

205); never received any PPP loans (¶ 12); and remain bound to pay back to CPF those loans

with interest and unable to obtain or even properly apply for forgiveness. ¶¶ 55, 60-61, 232;

App'x Tab 1 at 3. Plaintiffs failed to receive their PPP loans despite Defendants' knowledge that

CPF failed to fund SBA-approved PPP loans (¶ 106), and numerous additional follow-up

attempts by several Plaintiffs to actually get funded. *See, e.g.*, ¶¶ 119-21, 133-37, 147-48, 158-59, 207-08.

For their respective roles, CPF as the SBA-authorized PPP lender obtained over $6.4 billion or $7.5 billion in cash from the Federal Reserve's PPPLF *secured by*, and to be used *to fund*, Plaintiffs' eight and 472,028 other PPP loans (¶¶ 9, 87, 98-99, 104-05); falsely reported to the SBA it had funded them (¶ 100); was paid by the SBA $930 million in PPP loan fees and expects $1.1 billion in such fees (¶¶ 77-78); upstreamed to Crossroads all those fees; Crossroads reported in SEC filings that *it* obtained the $930 million "windfall" from PPP lending which increased its revenues *2,446%* to $932.7 million in FY 2021 compared to $36.6 million in FY 2020 (¶¶ 76, 82, 89); and Crossroads in turn, just weeks after the new applicant PPP lending window closed on May 31, 2021, declared and in July 2021 paid a special dividend to its shareholders in which it paid over $149.9 million in cash to Donnelly and Alpert personally. ¶¶ 11, 14-15, 76, 81-84. *See* App'x Tab 4 Feinstein Report ¶ 21 (discussing special dividend).

At the time the special dividend was declared and paid, Donnelly (at 37.8%) and Alpert (at 25%) owned a controlling equity stake in Crossroads. ¶ 80. In addition at all relevant times, Donnelly was also the dual CEO of both Crossroads and CPF; CPF was wholly owned by Crossroads (¶¶ 7, 80-81); and Donnelly, Alpert and other corporate insiders, including Farzana Giga ("Giga"), who simultaneously serves as CPF's and Crossroads's dual CFO, signed the Loan Documents for CPF, and also as a Crossroads shareholder participated in the special dividend, owned approximately 66% of Crossroads's equity. ¶¶ 7, 80, 84, 91, 93. In addition to the over $149.9 million in cash that Donnelly and Alpert were paid by the special dividend, including off the backs of Plaintiffs' and other unfunded borrowers' PPP loans, Donnelly and Giga also received over $8.8 million each in cash bonuses in 2021. ¶ 15.

4

Crossroads recently disclosed that *its* "outstanding advances on the PPPLF at July 31, 2022 was $1,260,012,462" and that CPF's PPP lending is the subject of government investigations. *See* https://crossroads.com/wp-content/uploads/2022/09/Q3-2022-OTC-Disclosure-Statement-FINAL_091222.pdf Item 5 at p. 10 and note 12 at p.27 (last visited Dec. 29, 2022); *see also* 2022_Q4 OTC Financial Statement Workbook - Release (crossroads.com) at 1 (PPPLF advance was $1,108,965,758 at Oct. 31, 2022) (last visited Dec. 19, 2022).

More recently, the U.S. Congressional House Select Subcommittee on the Coronavirus Crisis issued on December 1, 2022 its staff report "How Fintechs Facilitated Fraud in the Paycheck Protection Program" which contains findings regarding CPF's and Crossroads's PPP lending activities. *See* https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.12.01%20How%20Fintechs%20Facilitated%20Fraud%20in%20the%20Paycheck%20Protection%20Program_0.pdf (link to Congressional report) (last visited Dec. 9, 2022).

Similarly, on December 8, 2022, the SBA issued a press release stating that the House Select Subcommittee report "details serious problems of fraud and self-dealing by lenders" and that the SBA has "launched a full investigation of the lenders" including defendant "Capital Plus" to "ensure that federal financial regulators have a coordinated response to wrongdoing by lenders." *See* https://www.sba.gov/article/2022/dec/08/us-small-business-administration-statement-house-select-subcommittee-coronavirus-crisis-report (link to SBA press release) (last visited Dec. 9, 2022).

These facts are based largely on indisputable, publicly available information and Crossroads's own SEC filings and Donnelly's and Alpert's other public statements. Based on

CPF's false reporting, SBA data identifies Plaintiffs' loans as "disbursed" even though the loans were not, and Plaintiffs nevertheless remain bound to pay back to CPF those loan proceeds with interest. ¶¶ 12, 122-23, 138-39, 149-50, 160-61, 172-73, 184-85, 196-97, 210-11.

<u>**Legal Standard**</u>

"[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012). This requirement is an "implied prerequisite" of Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

Where as here class members are ascertainable, Plaintiffs must also demonstrate that the proposed Classes comply with Federal Rule of Civil Procedure 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation and, as applicable here, Rule 23(b)(3), "which requires that questions of law or fact common to the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (citing Fed. R. Civ. P. 23(b)).

The trial court must conduct a "rigorous analysis" of the Rule 23 requirements before certifying a class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). That analysis may "overlap" with analysis of the merits of a plaintiff's claims, *id*. at 351, but "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). Merits questions may be considered only to the extent that they are relevant to certification. *Id*.

"At bottom, the [predominance] inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial."

*Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016). *See also* App'x Tab 6 (attaching Plaintiffs' Proposed Trial Plan and identifying classwide evidence).

**Argument**

**I.     The Proposed Class and Subclasses are Ascertainable**

"An identifiable class exists if its members can be ascertained by reference to objective criteria." Manual for Complex Litigation (Fourth) § 21.222 (2004); *see also Cleven v. Mid-America Apartment Communities, Inc.*, 328 F.R.D. 452, 467 (W.D. Tex. 2018); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). "[T]he court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Seeligson v. Devon Energy Prod. Co.*, 753 F. App'x 225, 230 (5th Cir. 2018) (quoting *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (citing William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)).

Class members will be readily ascertainable upon Defendants' production of discovery. CPF's record-keeping responsibilities as a PPP lender are clear and likewise indisputable and detailed in part in an SBA Procedural Notice dated July 15, 2021. *See* https://www.sba.gov/sites/default/files/2021-07/Procedural%20Notice%205000-812316%20PPP%20Guaranty%20Purchase%20%26%20 Charge%20Off%20Servicing%20 7.15.21-508.pdf (last visited Dec. 12, 2022). That Notice states that PPP lenders are required to "[k]eep an accurate record under its direct control of each loan" and "submit separate monthly SBA Form 1502 reports that include loan status information for their PPP loans … until the loan is paid in full [or] fully forgiven." *Id.*, at 1-2. *Accord* App'x Tab 3 Manger Report ¶ 19. Those records will identify any CPF PPP loans that were approved by the SBA but not disbursed. Accordingly, the members of the Classes are ascertainable.

7

## II.     Plaintiffs Satisfy the Requirements of Rule 23(a)

**Numerosity:** Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." The Fifth Circuit has stated "that any class consisting of more than forty members 'should raise a presumption that joinder is impracticable.'" *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed.1992)). The key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981). Those other factors may include the class's "geographical dispersion," the "ease with which class members may be identified," and the "the nature of the action." *Id.*

Plaintiffs are mindful of Local Civil Rule 23.2(b)(1)'s requirement that they identify the approximate number of class members. Following the Court's denial of Defendants' motion to stay discovery on December 13, 2022 (ECF No. 47), Plaintiffs have already sought to confer under Fed. R. Civ. P. 26(f) and served Defendants with discovery, including discovery directed specifically at numerosity. Given the timeframe in which Defendants have effectively stalled any discovery to date, however, Plaintiffs have been unable thus far to obtain any information from Defendants regarding the size of the Classes or the status of the PPPLF advances CPF obtained on class members' unfunded loans, among other things. Accordingly, Plaintiffs intend to file supplemental submissions concerning numerosity or an amended motion for class certification following discovery as the Court may direct or permit. *Accord* App'x Tab 7 Lederer Decl. ¶ 3.

Despite Defendants' refusal to date to produce any discovery, Plaintiffs already number eight; others similarly situated continue to contact Plaintiffs' counsel and seek to be added; and publicly available information already indicates the existence of several other putative class

members. *See* ¶ 214(a)-(h). Plaintiffs submit that discovery will likely add many additional class member borrowers for each of the three Classes and exceed the relatively low figure that suffices to establish numerosity. And, as CPF contracted with PPP borrowers nationwide and in four U.S. territories, the members of the National Class are geographically dispersed.

**Commonality:** Rule 23(a)(2) requires that "there are questions of law or fact common to the class." That requirement entails "merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)) (emphasis in original). Plaintiffs' claims "'must depend on a common contention,' and the common contention 'must be of such a nature that it is capable of classwide resolution — which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Ahmad*, 690 F.3d at 702 (quoting *Dukes*, 564 U.S. at 350)).

Plaintiffs' claim that CPF breached all class members' standard form Loan Documents itself suffices to establish commonality. Here, however, the claims raise additional common questions that all class members share including, among others: whether CPF and Crossroads procured fees and PPPLF funds for PPP loans that CPF did not make; whether Crossroads controlled CPF; whether Crossroads and CPF were, in the alternative in view of Defendants' position that Loan Documents are not enforceable, unjustly enriched by virtue of procuring the fees and funds that resulted from their false submissions to the SBA regarding class member loans; and whether Donnelly and Alpert were likewise and independently unjustly enriched by directing and controlling CPF's PPP lending and also allocating to themselves substantial

9

portions of those fees. *See* App'x Tab 5 Briggs Report (discussing PPP context); App'x Tab 3 Manger Report ¶¶ 12-13 (same).

**Typicality:** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]he test for typicality is not demanding." *Mullen*, 186 F.3d at 625. "Typicality does not require a complete identity of claims." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by Stukenberg*, 675 F.3d at 839-41. In analyzing typicality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting Moore's Federal Practice § 23.24[4] (3d ed. 2000)). Often, once a party satisfies the commonality requirement, satisfying typicality "will follow as a matter of course." *M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013).

Plaintiffs' claims in this case are not only typical of the claims of the Classes -- they are in substance identical to those claims. Every class member signed and is governed by an identical package of Loan Documents and subject to identical PPP regulations. Virtually all relevant issues regarding the claims and defenses turn on Defendants' conduct that is largely identical as to all class members. Plaintiffs' typicality cannot credibly be disputed.

**Adequacy:** Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In determining adequacy of representation, the Court considers (1) the willingness and ability of the representatives to take an active role in the litigation and to protect the interests of class members they seek to represent and (2) the enthusiasm and competence of the proposed class counsel. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

10

The first inquiry turns principally on whether there exist any "intraclass conflicts" between the class representatives and others in the class. *In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1056 (S.D. Tex. 2012). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26. Although courts evaluating adequacy should consider class representatives' "willingness and ability ... to take an active role in and control the litigation," the representatives "need not be legal scholars and are entitled to rely on [class] counsel." *Feder*, 429 F.3d at 130-132 n.4.

Plaintiffs are adequate class representatives because their interests in prosecuting their claims are wholly aligned with the interests of the members of the Classes. Plaintiffs have all sought to obtain PPP loans and are well-versed as to their obligations in prosecuting this case and protecting the interests of the Classes in conjunction with counsel. *See* App'x Tab 8 (attaching Plaintiffs' declarations). Each proposed representative entered into the parties' Loan Documents (App'x Tab 1), many made additional follow-up attempts to obtain funding (¶¶ 119-21, 133-37, 147-48, 158-59, 207-08), and all will be prepared to testify at depositions and at trial as their accompanying declarations attest. *See* App'x Tab 8 ¶ 5; *accord* App'x Tab 6.

Plaintiffs' counsel from Kendall Law Group, PLLC, Bailey & Glasser LLP, Nolan Heller Kauffman LLP, and Friday, Eldredge & Clark, LLP combine to have extensive experience litigating complex and class action cases and cases involving financial institutions. *See* App'x. Tabs 9-12 (attaching Plaintiffs' counsels' resumes). As reflected in their resumes and discussed in greater detail in § IV below, Plaintiffs' counsel are knowledgeable and practiced attorneys

11

with a history of zealous advocacy on behalf of their clients. Plaintiffs satisfy Rule 23(a)(4)'s adequacy requirement.

### III.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

**Common Questions Predominate:**  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The standard requires that the proposed class be "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Frey*, 602 F. App'x at 170. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

Plaintiffs need not show they will prevail on predominantly common issues, but only that they can offer common evidence to prove their claims. *Amgen*, 568 U.S. at 459 (2013). It is enough if common issues predominate in the case as a whole; proof of each element need not be predominantly common. *Id.* at 469 ("Rule 23(b)(3) … does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." (emphasis in original)). Likewise, the necessity of individualized damages calculations are not a bar to class certification where, as in this case, common questions overwhelmingly predominate as to fact and liability issues. *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710–11 (5th Cir. 2020); *In re Deepwater Horizon*, 785 F.3d 1003, 1017 (5th Cir. 2015).

12

Common issues predominate in cases, including this case, where defendants' "misconduct affected the members of the Class in the same manner." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *15 (N.D. Tex. Nov. 8, 2005). *See also In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, 2002 WL 31415951, at *4 (N.D. Tex. Oct. 28, 2002). Common issues arising from Defendants' alleged misconduct will overwhelmingly "be the focus" at trial, *Crutchfield*, 829 F.3d at 376, and include at least the following:

- whether CFP had and breached its duty under the Loan Documents to fund Plaintiffs' and class members' SBA-approved loans;

- whether CPF's failure to fund these PPP loans also violated the SBA's funding rule and CPF's obligations to obtain and use advances it obtained from the PPPLF to fund PPP loans, be paid SBA fees only on funded loans, and report accurately to the SBA regarding PPP loan funding and PPP lending;

- whether each Defendant procured fees for PPP loans that CPF did not make;

- whether Crossroads controlled CPF;

- whether Donnelly and Alpert controlled Crossroads and CPF;

- whether and, if so, how Plaintiffs and class members suffered damages as a result of Defendants' alleged misconduct and the proper measure of relief;

- whether Crossroads and CPF were in the alternative, to the extent that Plaintiffs' breach of contract claims fail to provide adequate relief given Defendants' argument there is no enforceable contract (*see* ¶ 252), unjustly enriched from PPP loan fees and other income on class members' PPP loans;

- whether Donnelly and Alpert were likewise unjustly enriched by allocating to themselves substantial portions of those fees and other income;

- as to the California Subclass, whether Defendants' misconduct violated the UCL again only in the alternative, to the extent that Plaintiffs' contract claims fail to provide adequate relief to the members of the California Subclass (*see* ¶ 288); and

- as to the North Carolina Subclass, whether Defendants' misconduct violated the NCUDTPA.

13

Further, and as discussed more fully in Plaintiffs' Proposed Trial Plan, the evidence Plaintiffs intend to use to prove their claims at trial will also apply classwide, including predominantly the Loan Documents and governing PPP regulations themselves. Common issues likewise predominate with respect to even class members' damages. As Professor Feinstein concludes, "[d]amages in this matter can be computed in a straightforward manner for all Class members using a common methodology consistent with Plaintiffs' theory of liability." App'x Tab 4 Feinstein Report ¶ 16.

The fact that all class members signed identical Loan Document contracts (App'x Tab 1) and otherwise had little contact with CPF prior to CPF's breaching those contracts establishes predominant issues central to the case. *Accord* App'x Tab 2 Koontz Report § 5 (discussing the Loan Documents); App'x Tab 5 Briggs Report (discussing PPP context); App'x Tab 3 Manger Report ¶¶ 16-22 (accord).

Breach of contract cases "often lend themselves to class treatment." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 255 (5th Cir. 2020) (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.")). *See also Page v. State Farm Life Insurance Company*, 584 F. Supp. 3d 200, 221 (W.D. Tex. 2022) (finding predominance where members signed "standardized form contract, not subject to individual negotiation"); *Durrett v. John Deere Co.*, 150 F.R.D. 555, 560 (N.D. Tex. 1993) (finding predominance where claims arose from "similar if not identical contracts.").

The fact that National Class members reside in fifty states and four U.S. territories is no impediment to class certification because the alleged misconduct here is actionable under the laws of all such jurisdictions. As the Fifth Circuit stated in *Lyn-Lea Travel Corp. v. American*

*Airlines, Inc.*, 283 F.3d 282, 290 (5th Cir. 2002), "[t]he [Supreme] Court reasoned in [*American Airlines, Inc. v.*] *Wolens*[, 513 U.S. 219, 233 n.8 (1995),] that because contract law is, at its 'core,' uniform and non-diverse, there is little risk of inconsistent state adjudication of contractual obligations." *See also Cathedral of Hope v. v. FedEx Corp. Servs., Inc.*, 2008 WL 2242546, at * 5 (N.D. Tex. May 30, 2008) (citing *Lyn-Lea, Wolens*). Courts have repeatedly certified nationwide contract classes on that basis. *See, e.g., Zehentbauer Family Land, LP v. Chesapeake Exploration, L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019) (citing *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 42 (1st Cir. 2003)); *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 127 (2d Cir. 2013) (citing *Wolens*); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *22 (N.D. Cal. June 13, 2014); *Cox v. Spirit Airlines, Inc*., 2022 WL 939732, at *17 (E.D.N.Y. Mar. 3, 2022) ("The Second Circuit has also explained, in the context of breach-of-contract claims, that 'state contract law defines breach consistently such that the question will usually be the same in all jurisdictions.'").

That said, Plaintiffs are also aware that, as the Fifth Circuit held in *Cruson*, "[t]he party seeking certification of a nationwide class must therefore provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles. And the district court must then consider how variations in state law affect predominance." *Id.*, 954 F.3d at 254-55 (cleaned up). The Fifth Circuit in *Cruson* also held that *Steinberg v. Nationwide Mutual Insurance Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004), reflected a sufficiently "rigorous predominance analysis." *Cruson*, 954 F.3d at 255-56.

Accordingly, and in view of *Cruson*, Plaintiffs' counsel have prepared charts reflecting that, if proven as alleged, Defendants' underlying misconduct would similarly violate the

contract law of all jurisdictions encompassed within the National Class, and that any variations in those laws would not come close to defeating Plaintiffs' showing that common issues of proof will overwhelmingly predominate at trial. *See* App'x Tab 13. *Accord* App'x Tab 6. In sum, and as in *Lyn-Lea*, *Cathedral of Hope*, *Cox* and other cases, the contract claims here are consistent across all jurisdictions within the National Class.

To determine whether CPF has breached its form contracts, the Court should consider whether the Loan Documents and applicable PPP regulations are unambiguous and, if so, interpret the unambiguous language. *See, e.g., King v. Baylor Univ.*, 46 F.4th 344, 362 (5th Cir. 2022) ("Whether a contract is ambiguous is a question of law."); *In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013) ("Contract interpretation … is a question of law."). For this purpose, the vast majority of states, including Texas, follow what is known as the "Four Corners" or "Plain Meaning" rule, whereby the Court must determine whether the contract is unambiguous based on the "four corners" of the contract and, if it is, then the language of the contract should be applied as written, as the best representation of the parties' intent. *See* App'x Tab 13 (identifying 44 states and the District of Columbia which have adopted this standard of interpretation). Thus, for these jurisdictions, the Court should evaluate the "four corners" of the parties' Loan Documents and the applicable PPP regulations incorporated therein to determine whether CPF was bound to actually fund class members' SBA-approved PPP loans.

In contrast, the six remaining states allow for the admission of narrowly limited extrinsic evidence to interpret a contract to determine whether an ambiguity exists, following an exception recognized by Professor Corbin. *See* App'x Tab 13. Professor Corbin explained that "[t]he emphasis on discovery of the intentions of the parties through an examination of the *objective* indicia of those intentions is the approach endorsed by this treatise." 3 L. Cunningham and A.

16

Jacobson, Corbin On Contracts § 542 at 98 (1998 Supp.). In reaching this conclusion, Corbin

cited with approval Judge Posner's analysis in *AM International Inc. v. Graphic Management

Associates, Inc.*, 44 F.3d 572 (7th Cir. 1995), drawing a sharp distinction between "objective"

and "subjective" extrinsic evidence in this context. Judge Posner explained that when extrinsic

evidence might be admissible for purposes of determining the meaning of a contract, such

evidence was limited as to type and scope:

> By "objective" evidence we mean evidence of ambiguity that can be
> supplied by disinterested third parties: evidence that there was more than
> one ship called Peerless, or that a particular trade uses "cotton" in a
> nonstandard sense. The ability of one of the contracting parties to "fake"
> such evidence, and fool a judge or a jury, is limited. By "subjective"
> evidence we mean the testimony of the parties themselves as to what they
> believe the contract means. Such testimony is invariably self-serving,
> being made by a party to the lawsuit, and is inherently difficult to verify.
> "Objective" evidence is admissible to demonstrate that apparently clear
> contract language means something different from what it seems to mean;
> "subjective" evidence is inadmissible for this purpose.

*Id.* at 575. *See also Scherer v. Coney*, 2002 WL 31412757, at *4, 114 Wash. App. 1014 (Oct. 28,

2002) ("When considering the circumstances leading up to and surrounding a writing, a court

examines the parties' objective manifestations, but not their 'unilateral or subjective purposes

and intentions about the meanings of what is written.'"). Accordingly, *even in* the unlikely event

that admissible (*i.e.*, objective) evidence could have any bearing on the Court's ambiguity

analysis regarding whether, taken together, the Loan Documents and PPP regulations required

CPF to actually fund the class member SBA-approved loans, that evidence also would be

common as to those class members.

The same applies with respect to Plaintiffs' unjust enrichment claims. "There is general

agreement among courts that the 'minor variations in the elements of unjust enrichment under

the laws of the various states ... are not material and do not create an actual conflict.'" *In re*

17

*Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015). *See also Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 21 (D. Mass. 2010) ("there are only a few differences in the description of unjust enrichment claims as between states"). *Accord* App'x Tab 14 (analyzing unjust enrichment laws of National Class); App'x Tab 6 (identifying evidence Plaintiffs intend to use to prove their unjust enrichment claims classwide).

That said, if the Court determines that it requires additional analyses of variations among the laws of applicable jurisdictions for the National Class under the applicable Fifth Circuit standards, Plaintiffs respectfully request leave to file supplemental submissions or an amended motion for class certification to allow for that additional analysis. *See Advance Trust & Life Escrow Services, LTA v. Security Life of Denver Ins. Co.*, 2020 WL 8186476, at *7 (D. Colo. Apr. 13, 2020).

Plaintiffs' two subclasses present no such issues, as they are limited to residents of single states. Specifically, Defendants' violation of the UCL's "unlawful" prong is premised on CPF's violations of the SBA's funding rule, to use advances from the PPPLF to fund PPP loans, to be paid loan processing fees only on funded loans, and to report accurately to the SBA regarding PPP lending. Defendants' acts were also "unfair" under the UCL for violating the "legislatively declared policy" embodied in the PPP. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). *See also Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 331 (C.D. Cal. 2015) ("The Court agrees with other courts to confront this issue that whether a practice is unfair in the context of legislative policy [is a] question[] capable of classwide resolution."); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *28 (N.D. Cal. June 13, 2014) (accord).

Plaintiff Myles's NCUDTPA claim -- which is grounded in CPF's inducing the North Carolina Subclass to sign the Loan Documents without intending to perform (¶ 296) -- is likewise governed by the same in-state law. Nor does reliance on CPF's inducement to enter into the loans raise individual issues. "As the en banc court in *Torres* [*v. SGE Management, LLC*, 838 F. 3d 629 (5th Cir. 2016),] explained, common issues … predominate if common evidence of fraudulent misrepresentation 'gives rise to a reasonable inference that that misrepresentation induced [the class members' actions] and caused their losses.' 838 F.3d at 641. Other circuits have likewise 'permitted inferences of reliance when [they] follow[ ] logically from the nature of the scheme, and there is common, circumstantial evidence that class members relied on the fraud.' *Id.*" *Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 329–30 (5th Cir. 2020). "In cases involving fraudulent overbilling, payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." *Vine*, 807 F. App'x at 330 (quoting *U.S. Foodservice,* 729 F.3d at 120).

Here, the "circumstantial proof of reliance [is] based on the reasonable inference that" subclass members would not have applied to CPF -- and thereby forfeited their ability to apply to other PPP lenders -- had they known that CPF would not disburse the proceeds of their SBA-approved loans. *See also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 518 (6th Cir. 2015) (affirming certification of NCUDTPA class, reasoning that "[i]t does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due because the promise to [pay] was a central reason [class members] would sign the agreements.").

19

**Superiority:** Rule 23(b)(3) further requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy," and that courts consider: (1) the class members' interest in individually controlling their separate actions, (2) the extent and nature of existing litigation by class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular forum, and (4) the likely difficulties of managing a class action. As to the first factor, where, as here, the costs of litigating an individual action would exceed the expected recovery of each individual class member, this presents what are commonly referred to as "negative value suits." *See In re TWL Corp.*, 712 F.3d 886, 903 n.5 (5th Cir. 2013) (Graves, J., concurring) ("A negative value suit is a case in which the costs of enforcement in an individual action would exceed the expected individual recovery."). "The most compelling rationale for finding superiority in a class action" is "the existence of a negative value suit[.]" *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). Second, Plaintiffs are not aware of any other litigation by class members concerning the same claims. Third, this is a clearly proper forum for litigation focused on CPF and its controlling parent company and controlling shareholders, *and* given that CPF committed to fund hundreds of millions of dollars in PPP loans to some 37,800 Texas borrowers many of whom may be similarly situated SBA-approved but unfunded class members. *See* ¶ 9 (citing SBA PPP loan data).

Finally, the likely difficulties of managing this case as a class action pale in comparison to doing otherwise. Each Defendant's liability is a common question that would be inefficient to litigate piecemeal. Plaintiffs' counsel have spent and will if permitted by the Court continue to spend significant time litigating the liability and damage issues. Doing this work for an individual case alone would be cost-prohibitive and inefficient, particularly considering many of the same documents, experts and fact witnesses bear on the liability and damage issues

classwide. Absent a class action, the overwhelming majority of affected borrowers, whose loans are generally for less than $25,000, would likely not even pursue relief, much less succeed in securing it. The cost to them of proceeding on an individual basis would be impractical and uneconomical. Through the class action procedure, these common claims can be brought in one proceeding, preserving limited judicial resources and eliminating unnecessary duplication and potentially inconsistent adjudication. It would also "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980).

### IV. Plaintiffs' Counsel Meet the Requirements of Rule 23(g)

Fed. R. of Civ. P. 23(g)(1) requires courts to appoint class counsel for any certified class. In appointing class counsel, courts must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Class counsel has a duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Plaintiffs' counsel meet the requirements of Rule 23(g). Plaintiffs are represented by attorneys who have extensive experience litigating complex financial and class action lawsuits in federal courts. *See* App'x Tabs 9-12. Plaintiffs' attorneys have a deep understanding of the facts and issues, and a clear roadmap to pursue discovery based on having spent months investigating Plaintiffs' claims. Plaintiffs' attorneys have demonstrated their steadfast commitment to the case over nearly a year, refiling it promptly after the Arkansas court dismissed the prior version of this case without prejudice. Plaintiffs' counsel have furthered their investigation, repeatedly

21

pressed Defendants to commence discovery and have now started discovery following the Court's December 13, 2022 Order (ECF No. 47), and filed numerous briefs and accompanying documents including in opposition to Defendants' three separate motions to dismiss. They have built strong relationships with the Plaintiffs, been retained by others seeking to be added, and fielded wide-ranging inquiries from class members. They have undertaken a wide-ranging search and retained highly-qualified experts including two former senior SBA officials who helped oversee the PPP (*see* App'x Tabs 3, 5), an expert in commercial loans (App'x Tab 2), and an expert in capital markets (App'x Tab 4), and worked closely with those experts. Lederer Decl. ¶ 5. And Plaintiffs' counsel have already expended substantial time and costs including expert costs and have the necessary financial and human resources to litigate this matter through trial and on appeal. *Id*. Plaintiffs' attorneys are experienced advocates with the zeal, skill, and means to go toe to toe with likewise skilled defense counsel throughout, and accordingly satisfy the qualifications for appointment as class counsel pursuant to Rule 23(g).

V.      **Plaintiffs Satisfy the Additional Requirements of Local Rule 23.2.**

  **Local Rule 23.2(a):** As discussed above in Sections II and III, this suit is properly maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).

  **Local Rule 23.2(b):** Plaintiffs address the requirements referenced in Local Rule 23.2(b) in the Introduction, and Sections III and IV above, and intend to supplement or amend their motion for class certification to provide estimates regarding the approximate number of class and subclass members per Local Rule 23.2(b)(1) as the Court may direct or permit following a reasonable opportunity for discovery, as Defendants perhaps *alone* have that data.

  **Local Rule 23.2(c):** The basis of Plaintiffs' claims to be adequate representatives of the class is detailed in Section III above. Proposed class counsel have undertaken to fund this action

on behalf of the Classes on a contingent basis, have paid all the costs of litigation incurred, and commit to continuing to prosecute and fund the action through its resolution. Lederer Decl. ¶ 5.

**Local Rule 23.2(d):** This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). Plaintiffs allege that Defendants improperly failed to disburse loans in the thousands of dollars, and in many instances, tens of thousands of dollars, to each of a large number of class members. Based upon what Plaintiffs believe that number to be, Plaintiffs easily meet the jurisdictional threshold amount of $5,000,000 as required by 28 U.S.C. § 1332(d)(2). Discovery is necessary as to this factor which Plaintiffs have now commenced.

**Local Rule 23.2(e):** Notice will be provided by mail and/or electronic mail, based on Defendants' records. Plaintiffs' counsel will pay the cost of notice if ordered by the Court.

**Local Rule 23.2(f):** As also set forth in Plaintiffs' opposition to Defendants' motions to dismiss (ECF No. 46 at Tab A (Lederer Decl. ¶ 6)), Plaintiffs require the following information to properly prepare for a class certification hearing:

a. the total number of SBA-approved but unfunded PPP loans at issue in this case for the putative members of the National Class;

b. the total number of SBA-approved but unfunded PPP loans for the proposed California Subclass;

c. the total number of SBA-approved but unfunded PPP loans for the proposed North Carolina Subclass;

d. the total principal amount of all such SBA-approved but unfunded PPP loans for the proposed National Class, California Subclass and North Carolina Subclass;

e. the amount, status and whereabouts of the PPPLF advances CPF obtained for the SBA-approved but unfunded PPP loans for the proposed National Class, California Subclass and North Carolina Subclass, including without limitation the representations in Crossroads's financial reports regarding those advances;

23

f.      whether CPF transferred or otherwise paid any PPPLF advances it obtained to Crossroads or any other person or entity who or which was not an SBA-approved PPP borrower and, if so, to whom, when, how much, and why;

g.      the amount, status and whereabouts of the loan processing fees CPF was paid by the SBA for the SBA-approved but unfunded PPP loans of the proposed National Class, California Subclass and North Carolina Subclass; and

h.      the total number and principal amounts of the SBA-approved PPP loans CPF funded after December 29, 2021, when the prior version of this litigation was filed in the U.S. District Court for the Eastern District of Arkansas.

Defendants acknowledge that "CPF is required to keep under various estaregulations" [sic] PPP records but have also *already* asserted that producing them "would require detailed review for confidential personal and financial information" and "may be subject to the federal banking examiner's privilege, which is held by the regulator and requires financial institutions to provide notice to and obtain permission from the regulator before disclosing affected documents." ECF No. 42 at 5. Accordingly, while it is indisputable that CPF is required to maintain and readily access and produce PPP loan data (*see, e.g.*, ECF No. 41 at 10-11 (citing record keeping provisions)), Plaintiffs are unable presently to estimate the time necessary for such discovery with a high degree of confidence. Plaintiffs have already earlier this week served each Defendant with opening document requests and interrogatories along with a request for a Rule 26(f) meeting and a draft confidentiality order. Assuming Defendants produce the data Plaintiffs have requested regarding the Classes' unfunded loans within 30 days, Plaintiffs believe the parties can hold depositions within 45 days after that production, assuming no dispute arises between the parties that delays discovery. Plaintiffs will require additional discovery addressed to the merits, and do not by complying with Local Rule 23.2(f) waive any rights to pursue further discovery.

24

**Local Rule 23.2(g):** Plaintiffs will seek an award of attorneys' fees as may be approved by the Court in the event of certification and judgment in favor of Plaintiffs and the Classes. Plaintiffs' counsel have entered into contingency fee contracts with Plaintiffs which allow for such an application.

<u>Conclusion</u>

For the forgoing reasons, Plaintiffs respectfully request that the Court certify the National Class, the California Subclass and the North Carolina Subclass; appoint Plaintiffs as representatives of the National Class; appoint plaintiffs Covarrubias and Smith as representatives of the California Subclass; appoint plaintiff Myles as representative of the North Carolina Subclass; and appoint Plaintiffs' counsel as counsel to the Classes.

Dated: January 11, 2023                    Respectfully submitted,

**Kendall Law Group, PLLC**

By: */s/ Joe Kendall*
    Joe Kendall
    Texas Bar No. 11260700
    3811 Turtle Creek Blvd., Suite 1450
    Dallas, TX  75219
    T:  (214) 744-3000
    F:  (214) 744-3015
    jkendall@kendalllawgroup.com

**Bailey & Glasser LLP**
Lawrence J. Lederer (*pro hac vice*)
Bart D. Cohen (*pro hac vice*)
1622 Locust Street
Philadelphia, PA  19103
T:  (215) 274-9420
F:  (202) 463-2103
llederer@baileyglasser.com
bcohen@baileyglasser.com

25

**Bailey & Glasser LLP**
Michael L. Murphy (*pro hac vice*)
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
T:  (202) 463-2101
F:  (202) 463-2103
mmurphy@baileyglasser.com

**Nolan Heller Kauffman LLP**
Justin A. Heller (*pro hac vice*)
Matthew M. Zapala (*pro hac vice*)
80 State Street, 11th Floor
Albany, NY 12207
T:  (518) 449-3300
F:  (518) 432-3123
jheller@nhkllp.com
mzapala@nhkllp.com

and

**Friday, Eldredge & Clark, LLP**
Katherine C. Campbell (*pro hac vice*)
3350 S. Pinnacle Hills Pkwy, Suite 301
Rogers, AR  72758
T:  (479) 695-6049
F:  (501) 244-5389
kcampbell@fridayfirm.com

*Attorneys for Plaintiffs and the*
*Proposed Class and Subclasses*

## Certificate of Service

I hereby certify that a copy of the foregoing document was served on all counsel of record on January 11, 2023 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Joe Kendall*
Joe Kendall

26