IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Eric Greathouse et al.**, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>**Capital Plus Financial, LLC et al.**,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§ Case No. 4:22–CV–00686–P<br>§<br>§<br>§<br>§<br>§<br>§ |

**Brief in Support of Defendants' Omnibus Motion to Strike
Plaintiffs' Class Certification Expert Reports and to Exclude Expert Testimony**

Katherine G. Treistman
Tex. Bar No. 00796632
Andrew D. Bergman
Tex. Bar No. 24101507
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002–2755
Tel.: (713) 576–2400
Fax: (713) 576–2499
Katherine.Treistman@arnoldporter.com
Andrew.Bergman@arnoldporter.com

Michael P. Lynn
Tex. Bar No. 1273800
Christopher J. Schwegmann
Tex. Bar No. 24051315
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel. (214) 981–3800
Fax: (214) 981–3839
mlynn@lynnllp.com
cschwegmann@lynnllp.com

Eric N. Whitney
Tex. Bar No. 00785241
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019–9710
Tel.: (212) 836–8000
Fax: (212) 836–8689
Eric.Whitney@arnoldporter.com

*Attorneys for Defendants Capital Plus Financial, LLC;
Crossroads Impact Corp.; Eric Donnelly; and Robert Alpert*

Submitted:    February 2, 2023

**INTRODUCTION**

Plaintiffs' class certification motion is accompanied by reports of four experts that have no relevance to class certification. The Court should both strike Plaintiffs' expert reports for purposes of class certification and exclude the testimony of those experts from any class certification hearing. Their attempt to include these expert reports is, by all appearances, an attempt to deceive the Court into believing that there is sufficient evidence to support class certification when there plainly is not. Indeed, the four experts—Jason Koontz, William Manger, Steven Feinstein, and William Briggs—all purport to opine on legal issues regarding the merits of the case which are never proper subjects of expert testimony, let alone at the class certification stage. These types of grossly improper expert opinions are inadmissible under *Daubert* and have no place in the class certification record. Defendants respectfully request that the Court strike Plaintiffs' expert reports and exclude their testimony from any class certification hearing.

**RELEVANT BACKGROUND**

Without addressing the merits of Plaintiffs' class certification motion to which Defendants will file a separate opposition, this Motion to Strike addresses Plaintiffs' attempt to use improper and irrelevant expert opinions to seek class certification. To support their class certification motion, Plaintiffs offer proposed testimony of four expert witnesses, whose reports are provided in Plaintiffs' Appendix to their Class Certification Motion (ECF 69) ("Plfs.' App'x"):

(1) Jason D. Koontz (Plfs.' App'x Tab 2 at 0015–39);

(2) William M. Manger, Jr. (Plfs.' App'x Tab 3 at 0040–49);

(3) Steven P. Feinstein (Plfs.' App'x Tab 4 at 0050–76); and

(4) William Briggs (Plfs.' App'x Tab 5 at 0077–86).

I.  **Jason Koontz**

Koontz purports to be an expert in the area of "commercial lending" and his CV indicates that he held positions at various banks in West Virginia and Ohio from 1991–2012. Plfs.' App'x Tab 2 at 0016, 0031–32. His report discusses his qualifications and recounts what he believes are "[b]ackground [f]acts" about this case, which are based principally on Plaintiffs' complaint. *See id.* at 0018–20, 0030. He then offers essentially three opinions:

(1) A promissory note is a lender's offer of a loan, which the borrower can accept by signing it. *Id.* at 0024.[1]

(2) A lender has to fund a loan after the borrower signs the promissory note or provide notice to the borrower for the decision not to fund. *Id*. at 0025.

(3) "It is irregular and inconsistent with standard lending practice" for lenders to provide misleading information to government agencies. *Id.* at 0025.

The only argument for which Plaintiffs cite Koontz's expert report in their class certification briefing is their claim that "[t]he fact that all class members signed identical Loan Document contracts … and otherwise had little contact with CPF prior to CPF's breaching those contracts establishes predominant issues central to the case." Plaintiffs' Brief in Support of Motion for Class Certification (ECF 68) ("Plfs.' Cl. Cert. Br.") at 14. Yet, Koontz's report does not address any of these issues and nowhere does he even purport to opine that all class members signed the same documents or the extent of any class members' contact with CPF. *See* Plfs.' App'x Tab 2 at 0016–25.

---

[1] Koontz also opines that Plaintiff Greathouse's Promissory Note was a form of closed-end credit, which he distinguishes from open-end credit. Plfs.' App'x Tab 2 at 0022–23, 0025. But this is not material, because Defendants are unlikely to dispute that PPP loans are a form of closed-end credit, as opposed to open-end.

## II.   William Manger

Manger is a former SBA employee who served as Chief of Staff and in different administrator roles. *Id.*, Tab 3 at 0041–42. He does not specifically state his proffered area of expertise, but claims to have been "responsible for promulgating PPP-specific rules and guidance, implementing PPP-specific processes at SBA, and communicating with lenders, trade associations, government agencies, and members of Congress." *Id.* at 0041. Manger recounts some of the history of the SBA, the Section 7(a) Loan Program, the CARES Act, and the PPP. *Id.* at 0042–44. He then goes on to offer essentially three opinions as to the obligations of PPP lenders under promissory notes for PPP loans and requirements under SBA policies and under the PPP itself:

(1) A PPP lender who sends a borrower a promissory agreement to sign has entered into an agreement to make the loan. *Id.* at 0045 ¶ 18.

(2) SBA regulations require a PPP lender to make a one-time full disbursement of a PPP loan for which they are the lender after the loan is approved by the SBA. *Id.* at 0045 ¶ 19.

(3) A PPP lender would violate SBA regulations if it submitted a Form 1502 to the SBA for an approved loan but had not disbursed the loan. *Id.* at 0046 ¶ 22.

As with Koontz, Plaintiffs also cite Manger's expert report for their argument that class members signed the same notes and had little contact with CPF (Plfs.' Cl. Cert. Br. at 14), although his report does not opine on any of these issues except to assert that "[i]t is [his] understanding that CPF utilized the SBA standard Promissory Note for its lending transactions under PPP." *Id.* at 0045 ¶ 18. Plaintiffs also cite Manger's report for the proposition that a PPP lender was required to keep an accurate record of loans it makes and to submit periodic SBA Form 1502 reports regarding the status of those loans, Plfs.' Cl. Cert. Br. at 7, although this is just a parallel citation to an SBA Procedural Notice setting out these requirements. *See id.* Finally, Plaintiffs cite Manger's report, in addition to their other expert, William Briggs's report, as "discussing PPP

context" in support of their argument that the case raises common questions to all class members. *Id.* at 9–10. But neither the paragraphs in Manger's report that Plaintiffs cite for this point, paragraphs 12 and 13, nor anything else in Manger's report addresses any common issues to all class members. Indeed, paragraphs 12 and 13 of Manger's report are just general background information about the PPP. Plfs.' App'x Tab 3 at 0034 ¶¶ 12–13.

### III.     Steven Feinstein

Feinstein is an economist. *Id.*, Tab 4 at 0053 ¶¶ 5–6. His report recounts certain purported facts about the case and about Defendants (*id.* at 0056–57 ¶¶ 17–21) and offers basically four opinions:

(1) Damages in this case can be calculated on a class-wide basis consistent with Plaintiffs' theory of the case. *Id.* at 0056 ¶ 16.

(2) Each Class member's damages are at minimum the amount of the PPP loan that they did not receive, minus the amount they did receive (if any). *Id.* at 0058 ¶ 25.

(3) The above measure of damages is "conservative" in that it excludes other categories of damages that class members might otherwise claim, such as the value of potential lost opportunities and consequential damages. *Id.* at 0058 ¶¶ 27–28.

(4) Punitive damages, if awarded in this case, "can be allocated to Class members on a pro-rata basis, commensurate with their proportion of total economic damages." *Id.* at 0059 ¶ 29.

The only argument for which Plaintiffs cite Feinstein's report is their assertion that damages calculation would be straightforward for all class members based on Plaintiffs' theory of liability. Plfs.' Cl. Cert. Br. at 14. However, it is unclear, either from Feinstein's report or from Plaintiffs' brief why an expert is needed to make any of these calculations. *See* Plfs.' App'x Tab 4 at 0058 ¶ 25.

IV.     **William Briggs**

Briggs, like Manger, is another former SBA employee who served in various administrator roles during his time with the agency. *See id.*, Tab 5 at 0078. His expert report does not state a precise area of expertise in which he is being offered, however, he does claim that he is "an expert on the [PPP] program from its inception through January 20, 2021 including its operations, its designs, and many facets of the program and its execution" and that his "testimony is focused on aspects of the Paycheck Protection Program that were administered by the Small Business Administration." *Id.* at 0078–79.

Briggs's report recounts some background information regarding the PPP and the policies behind it (*id.* at 0079–80) and then offers essentially four opinions:

(1) SBA policies required PPP lenders to timely disburse approved PPP loans and that for non-disbursed loans lenders had to work with the borrower to resolve any issues or otherwise cancel the loan. *Id.* at 0082–83.

(2) SBA policies prevented borrowers with PPP loans pending from seeking PPP loans from other lenders;

(3) Lenders were required to report PPP loans to the SBA to receive processing fees and were not entitled to processing fees for loans that were not disbursed. *Id.* at 0083–85.

(4) If a borrower did not receive a PPP loan, and did not apply for forgiveness, they could be "incorrectly designated by the SBA's systems as being required to start making payments to satisfy the original loan promissory note conditions" and that a borrower would "theoretically" lose money by repaying a loan they did not receive. *Id.* at 0086.

Similar to Koontz and Manger, Plaintiffs' class certification arguments cite Briggs's report only for the propositions that there are issues common to all class members (Plfs.' Cl. Cer. Br. at 10) and that "[a]ll class members signed identical Loan Document contracts … and otherwise had

little contact with CPF prior to CPF's breaching those contracts establishes predominant issues central to the case." *Id.* at 14.  In neither instance do Plaintiffs cite any particular part of Briggs's report which support these statements; and, in any event, Briggs's report does not speak to commonality or predominance of any issues.

## LEGAL STANDARD

A plaintiff seeking class certification must submit "evidentiary proof" of their compliance with Rule 23.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013).  This means there must be "adequate <u>admissible</u> evidence to justify class certification." *Unger v. Amedisys, Inc.*, 401 F.3d 316, 318 (5th Cir. 2005) (emphasis added).  Thus, when a plaintiff offers expert opinions in support of class certification, those opinions must be admissible under Federal Rule of Evidence 702 and the governing standards under *Daubert*.  *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021). *Daubert*, in turn, requires that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–48 (1999) (clarifying that the *Daubert* requirements apply to both scientific and non-scientific experts).

## ARGUMENT AND AUTHORITIES

The Court should strike Plaintiffs' expert reports offered in support of their class certification motion and exclude any testimony those experts might offer in support of class certification because they purport to offer testimony on the merits which has no relevance to any of the class certification requirements under Rule 23.  The experts' opinions are also improper and excludable on the basis that they purport to offer impermissible legal opinions.

**I.  Plaintiffs' Proposed Expert Opinions are Irrelevant to Class Certification**

The Court should strike and exclude Plaintiffs' four expert opinions, because none of these opinions are relevant to class certification.  Under *Daubert*'s relevance prong, the proponent of

expert testimony must "demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *United States v. Kuhrt*, 788 F.3d 403, 419 (5th Cir. 2015) (internal quotation marks omitted). As the Supreme Court in *Daubert* explained:

> The [relevance requirement] has aptly been described … as one of 'fit.' 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other unrelated purposes. The study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark, and if darkness is in fact an issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night. Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

*Daubert*, 509 U.S. at 591–92; *see also Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1019, 1031 (N.D. Ill. 2014 ("Stephen Hawking would be a stunning witness in a case involving theoretical physics, but would never see the light of day in an accounting malpractice case.").

Plaintiffs' class certification motion raises the familiar issues under Rules 23(a) and 23(b)(3): numerosity, commonality, typicality, adequacy, predominance, and superiority. Plfs.' Cl. Cert. Br. at 7–25. Also at issue is whether the classes, as Plaintiffs define them, are sufficiently ascertainable and whether Plaintiffs and the putative class have standing.

Yet Plaintiffs' proposed experts speak to none of these issues and are merely merits experts inappropriately being offered for purposes of class certification. Koontz's report offers generalized opinions about practices in the lending industry (Plfs.' App'x Tab 2 at 0015–39); Manger's and Briggs's reports concern the PPP and SBA policies (Plfs.' App'x Tab 3 at 0040–0049 and Tab 5 at 0077–0086); and Feinstein's report concerns potentially recoverable damages. Plfs.' App'x Tab 4 at 0050–0076. This type of merits expert testimony is inappropriate at this stage of the case and should be stricken and excluded. *See, e.g., Schafer v. State Farm & Fire*

*Cas. Co.*, 2009 WL 799978, at *4 (E.D. La. Mar. 25, 2009) (expert opinions that were "irrelevant to class certification" and "go to the merits" were "stricken in their entirety for the purposes of class certification.").

And Plaintiffs' briefing does next to nothing to show why these experts are relevant to class certification—often citing to the expert reports generally without reference to any particular page, paragraph, of discussion in those reports. *See, e.g.*, Plfs.' Cl. Cert. Br. at 10, 14, 22. Otherwise, Plaintiffs' citations to their expert reports are principally for points those reports do not address, including that class members signed the same promissory notes or that there are otherwise issues common to the class. *See id.* at 9–10, 14.

## II.     Plaintiffs' Proposed Experts Impermissibly Opine on Legal Issues

Even if the Court finds that Plaintiffs' experts' opinions have some relevance to class certification (and they do not), their opinions should still be stricken as they will not "assist the trier of fact to understand or determine a fact in issue," as required for admissibility under *Daubert*. 509 U.S. at 592; *accord* FED. R. EVID. 702(a). To that end, "[e]xperts cannot render conclusions of law or provide opinions on legal issues." *Renfroe v. Parker* 974 F.3d 594, 598 (5th Cir. 2020) (internal quotation marks omitted). Yet all four of Plaintiffs' experts do precisely that.

First, Koontz opines the borrower's signing of a promissory note, like the notes at issue, creates a contract under which the lender is required to tender the loan funds (Plfs.' App'x Tab 2 at 0024–0025). Manger similarly opines that PPP lenders whose borrowers signed promissory notes were required to issue loan funds. Plfs.' App'x Tab 3 at 0045. These are purely legal opinions, which are unsupported by any legal authority and contradict the plain language of the notes, which lacks any promise to fund the loans. *See* CPF Mot. to Dismiss Br. (ECF 37) at 10. Whether documents formed a contract is a disputed question of law for the Court to decide based on the text of the documents and governing law, not the self-serving opinions of Plaintiffs' experts.

Second, Manger's other opinions, and all of Briggs's opinions, address requirements for lenders and borrowers under the PPP and SBA policies. Plfs.' App'x Tab 3 at 0044–46, Tab 5 at 0080–0086. These too are purely legal opinions which should be stricken. That these individuals used to work for the SBA is at best immaterial and at worst biased, because the agency's interpretation of its controlling statutes and policies would be expected to favor the agency rather than regulated parties. Indeed, Manger cites as purported SBA "policy" non-codified commentary in the federal register. Plfs.' App'x Tab 3 at 0044–0045.

Third, Feinstein opines that if liability is proven, each class member would be entitled to damages in the amount of loan funds they did not receive. Plfs.' App'x Tab 4 at 0057–0059. Whether Plaintiffs may recover the damages in the amount of their PPP loans is a question of law presently at issue in the case, *see* CPF Mot. to Dismiss Br. (ECF 37) at 15–16, and the Court should not permit Plaintiffs to submit argument on this issue disguised as an "expert" opinion.

### III. Feinstein's Opinions Fail to Satisfy *Daubert*'s Helpfulness Requirement.

The opinions of Plaintiffs' damages expert, Feinstein, should be stricken and excluded for the additional reason that they are simply not helpful to the Court as required under *Daubert* and Rule 702. *See* Fed. R. Evid. 702(a). Feinstein's opinion that each class member would be entitled to damages in the amount of the loan funds they did not receive is not—contrary to Feinstein's assertions—consistent with Plaintiffs' theory of liability. This matters because "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [plaintiffs'] theory [of liability]" in the case. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Feinstein's opinion fails this requirement for two reasons.

First, Plaintiffs' principal theory of liability—breach of contract—does not allow for recovery of loan proceeds in a case where a loan contract is allegedly breached; rather, the measure of damages for breach of a loan contract is simply the cost of obtaining a replacement loan. *See*

CPF Mot. to Dismiss Br. (ECF 37) at 15–16 (citing authorities); CPF Mot. to Dismiss Reply (ECF 51) at 6–7 (citing authorities). Feinstein's opinion ignores the applicable law and merely parrots Plaintiffs' unsupported assertions that Plaintiffs can recover loan proceeds. Feinstein's "opinion" is no substitute for legal authority that Plaintiffs have never been able to provide for this position.

Second, Feinstein's opinion is inconsistent with Plaintiffs' theory of liability because, by his own admission, his damages model jettisons multiple categories of damages that might be available to class members should they elect to bring individual suits, including consequential damages and loss of business opportunities. Plfs.' App'x Tab 4 at 0058 ¶¶ 27–28. An expert's choice to offer a damages model that excludes potentially recoverable damages—ostensibly to avoid individualized issues those damages categories create—is unreliable because it does not comport with Plaintiffs' theory of liability as required under *Comcast*. *See* 569 U.S. at 35. Put another way, just because the Named Plaintiffs and their expert may want to disclaim individualized damages categories in the case in the interest of seeking class certification—it is neither helpful nor reliable for Feinstein to assume in his damages model that unnamed class members would do the same.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike the expert reports of Jason Koontz, William Manger, Steve Feinstein, and William Briggs at pages App'x 0015–0086 of Plaintiffs' Appendix in support of their Motion for Class Certification at ECF 69. Defendants further request that the Court exclude the testimony of those experts from any hearing on class certification and grant any such other relief to which Defendants may justly be entitled.

Dated: February 2, 2023                                      Respectfully submitted,

                                                                                 *s/ Katherine G. Treistman*
                                                                                 Katherine G. Treistman
                                                                                 Tex. Bar No. 00796632

Andrew D. Bergman
Tex. Bar No. 24101507
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002–2755
Tel.: (713) 576–2400
Fax: (713) 576–2499
Katherine.Treistman@arnoldporter.com
Andrew.Bergman@arnoldporter.com

Eric N. Whitney
Tex. Bar No. 00785241
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019–9710
Tel.: (212) 836–8000
Fax: (212) 836–8689
Eric.Whitney@arnoldporter.com

Michael P. Lynn
Tex. Bar No. 1273800
Christopher J. Schwegmann
Tex. Bar No. 24051315
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel. (214) 981–3800
Fax: (214) 981–3839
mlynn@lynnllp.com
cschwegmann@lynnllp.com

*Attorneys for Defendants Capital Plus Financial, LLC; Crossroads Impact Corp.; Eric Donnelly; and Robert Alpert*