UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ERIC GREATHOUSE, ET AL.,**

Plaintiffs,

v.                                          **No. 4:22-CV-0686-P**

**CAPITAL PLUS FINANCIAL,
LLC, ET AL.,**

Defendants.

## OPINION & ORDER

Before the Court is Plaintiffs' Motion for Class Certification. ECF No. 67. For the reasons stated below, the motion is **DENIED**.

## INTRODUCTION

Class actions exist for the "promotion of efficiency and economy of litigation." *Crown v. Parker*, 462 U.S. 345, 349 (1983). So even when multiple people are wronged by the same party, they must prove that litigating their claims via class action will serve these two interests. But when differing factual scenarios exist between all Plaintiffs, these two interests are frustrated. Thus, common answers are just as important as common questions when dealing with a nationwide class.

Plaintiffs in this case appear to have legitimate grievances. But the questions common to all potential class members do not give the same answers—making the potential adjudication of this class inefficient and uneconomic. For this reason, the Court **DENIES** the motion.

## FACTUAL & PROCEDURAL BACKGROUND

In 2020, Congress passed the CARES Act, which provided for the Payroll Protection Program ("PPP")—a loan assistance program for businesses financially burdened by local, state, and federal restrictions. This act required a comprehensive plan to disperse over $800 billion dollars to countless qualified businesses in a short timeframe. As a

result, the government worked with private lenders to streamline the approval process.

Private lenders were tasked with processing PPP loan applications and submitting completed applications to the SBA for processing. The SBA would then approve the applications by assigning an SBA number. Once an SBA number was assigned, the lenders were required to disburse the funds within ten days of approval. If paperwork associated with the process was incomplete, lenders were also under a duty—in this narrow situation—to cancel the SBA number and loan process within 20 calendar days of approval. Private lenders were incentivized to process loans by government fees paid out upon completion of the approval process. To further assist lenders with the approval process, the Federal Reserve instituted the Paycheck Protection Program Liquidity Facility ("PPPFL"), which advanced funds through non-recourse loans to lenders who could provide proof of approvals and disbursements of PPP loans as collateral.

In 2021, Defendant Capital Plus Financial LLC ("Capital Plus")—a wholly owned subsidiary of Defendant Crossroads Inc.—began approving PPP loans. And in less than five months, Capital Plus approved an astonishing 472,036 loans. The volume of loans approved was so numerous that they became the second largest lender of PPP loans in 2021—outperforming nearly every recognizable financial institution in the country. To aid in this overwhelming process, Capital Plus enlisted help from outside providers to process the hundreds of thousands of applications because of capacity constraints.

Capital Plus and Crossroads made an astonishing $970.5 million in revenue in mere months by capitalizing on PPP approval fees. On top of this, Capital Plus—due to their massive quantity of "approved" loans—drew down nearly $7.5 billion in funding from the PPPFL program. After the PPP window closed, Crossroads paid out a $238.9 million dividend to shareholders. Most of the dividend money went to insiders in the company like Defendants Alpert and Donnelly who together owned 62.8% of outstanding shares.

But while the income of Capital Plus and Crossroads soared, complaints from individuals approved for loans did as well. Plaintiffs allege that—although they received SBA numbers—funds were never disbursed to them. And because of this failure to fund, Plaintiffs could not go to another lender as they were restricted from doing so once a valid SBA number was assigned to them. Plaintiffs also allege that because an SBA number was assigned to them, they are still under the legal obligation to pay back money that they never received. While Plaintiffs were approved and suffered similar injuries, their situations after approval differ. Some loans were denied and canceled because of inconsistent paperwork. Some loans were disbursed but rejected by banks for various reasons. And some were disbursed but mysteriously never arrived.

Because of the alleged faults of Crossroads, Capital Plus, and its directors, a group of Plaintiffs bring this suit under the Class Action Fairness Act seeking redress of their injuries under three claims: (1) Breach of Contract; (2) The California Unfair Competition Law ("UCL); and (3) The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA").

Plaintiffs now move for class certification.

## B. Proposed Classes

### 1. Nationwide Class

Plaintiff Eric Greathouse is a citizen of Arkansas who owns an insurance inspection business. Plaintiff Tiffany Sumrall is a citizen of Texas who owns a landscaping business. Plaintiff Cori Pericho is a citizen of Hawaii who owns a messenger and delivery service. Plaintiff John Pinkney is a citizen of Texas who owns a cable communications business. Plaintiff Alicia Mena is a citizen of Arizona who owns a housecleaning business. These Plaintiffs were assigned SBA numbers by Capital Plus, but their loans remain unfunded. As a result, they collectively seek to represent a nationwide class and bring a claim for breach of contract.

Plaintiffs seek certification of this class under the following criteria:

> All persons and entities in the United States and its
> territories Guam, Northern Mariana Islands, Puerto Rico,
> and U.S. Virgin Islands who, in 2021, applied for PPP loans
> with defendant CPF as the lender for whom the SBA
> provided an SBA loan number, and who executed and
> submitted their Loan Documents but did not receive the
> PPP loan proceeds.

ECF No. 68 at 2.

### 2. North Carolina Subclass

Plaintiff Barbara Myles is a citizen of North Carolina who owns a business that assists independent artists. Myles was assigned an SBA number by Capital Plus, but her loan remains unfunded. Myles seeks to represent a North Carolina subclass and brings a claim under the NCUDTPA together with a breach-of-contract claim.

Plaintiffs seek certification of this subclass under the following criteria:

> All persons and entities in North Carolina who, in 2021,
> applied for PPP loans with defendant CPF as the lender for
> whom the SBA provided an SBA loan number, and who
> executed and submitted their Loan Documents but did not
> receive the PPP loan proceeds.

ECF No. 68 at 2.

### 3. California Subclass

Lastly, Plaintiff Ernesto Covarrubias is a citizen of California who owns an auto repair business. Plaintiff Joshua Smith is also a citizen of California who owns and operates a delivery and human resource and consulting business. These Plaintiffs were also assigned SBA numbers by Capital Plus, and their loans were never funded. Covarrubias and Smith seek to represent a California subclass and bring a claim under the UCL together with a breach-of-contract claim.

Plaintiffs seek certification of this subclass under the following criteria:

> All persons and entities in California who, in 2021, applied
> for PPP loans with defendant CPF as the lender for whom
> the SBA provided an SBA loan number, and who executed
> and submitted their Loan Documents but did not receive
> the PPP loan proceeds.

ECF No. 68 at 2.

## LEGAL STANDARD

### A. Class Certification

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). Federal Rule of Civil Procedure 23 controls whether this limited exception applies. A party seeking class certification thus "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). In doing this, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, and so on." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545–46 (5th Cir. 2020) (internal quotations omitted) (emphasis in original).

Because of the extraordinary nature of class actions, Rule 23 requires a "rigorous analysis." *Id.* Rule 23 thus requires courts "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350–51. As a result, the Court's mandated duty is to: "understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful determination. If some of the determinations cannot be made without a look at the facts, then the judge must undertake that investigation." *Chavez*, 957 F.3d at 546.

After this analysis, a court must "detail with specificity its reasons" behind its conclusions, "explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses," and

"articulat[e] why the issues are [or are not] fit for class wide resolution." *Id*. This is not a rubber-stamp procedure.

This process exists because "certification can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *Id*. And further, after certifying a class, any judgment binds absent class members forever. *See Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 454 (5th Cir. 2016). Thus, the "existence of a class fundamentally alters the rights of present and absent members." *Chavez*, 957 F.3d at 547.

## ANALYSIS

### A. Ascertainably

Defendants argue that the proposed classes are not ascertainable because (1) their definitions create a "fail-safe" class and (2) the definitions are too indefinite. The Court disagrees.

To maintain a class action "the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). A "fail-safe" class occurs where "membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." *In re Rodriguez*, 695 F.3d 360, 369–70 (5th Cir. 2012) (internal citations omitted). In other words, "the class definition is framed as a legal conclusion." *Id*. Despite the unique nature of these classes, the Fifth Circuit has explicitly rejected a rule against certifying fail-safe classes. *Id*.  Thus, a fail-safe class may have qualifications that go "to both questions of liability and damages, but [may not be] so vague that potential class members are unascertainable." *Simms v. Jones*, 296 F.R.D. 485, 507 (N.D. Tex. 2013) (Lynn, J.).

Plaintiffs define their potential class as follows: "All persons … who, in 2021, applied for PPP loans with defendant CPF as the lender and for whom the SBA provided an SBA loan number, and who executed and submitted their Loan Documents but did not receive the PPP loan proceeds." ECF No. 68 at 2. Aside from dates and entities, the class boils down to these qualifiers: (1) whether an SBA number was issued, and

6

(2) whether funds were not disbursed. For starters, it is unclear if this class calls for a legal conclusion on liability. As discussed later, the failure to disburse PPP loan proceeds itself, under the contractual and statutory obligations present, does not always put liability in play. And next, even if the class was strictly defined by an issue of liability—which is not fatal to begin with—it is a cut and dry class that is easily ascertainable based on loan data kept by Defendants. The two needed characteristics—an SBA number and a failure to receive loan proceeds—are easily identifiable with available data. By this definition and with the extensive records kept by Defendants, it is easy to define who is in and who is out of the class without resorting to a scavenger hunt.

The class is thus ascertainable. The Court next addresses the Rule 23(a) requirements.

## B. Rule 23(a) Requirements

Rule 23(a) prescribes four prerequisites for class certification. The four requirements are (1) that the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) that there are questions of law or fact common to the class ("commonality"), (3) that the claims and defenses of the parties are typical of the claims or defenses of the class ("typicality"); and (4) that the representative parties will fairly and adequately protect the interest of the class ("adequacy of representation"). FED. R. CIV. P. 23(a); *see also Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023).

The Court concludes that Plaintiffs do not meet the first three requirements.

### 1. Numerosity is not met.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To meet this standard, a plaintiff "must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. 1981).

Plaintiffs have failed to meet this standard. In their motion, Plaintiffs note that at the time of the filing, they could not give an estimate as to the class size. As a result, Plaintiffs stated that they intended "to file supplemental submissions concerning numerosity or an amended motion for class certification following discovery." ECF No. 68 at 15. It has been over seven months since the filing of this motion and the Court has not received any further information. And Discovery has been available to Plaintiffs during this entire time. *See* ECF No. 47 (denying Defendants' motion to stay discovery).

As a result of this failure to provide any evidence or reasonable estimate on the potential number of class members, numerosity is not met. But even if Plaintiffs' motion satisfied numerosity, it still fails other requirements under Rule 23(a).

2. <u>Commonality is not met.</u>

Defendants next assert that Plaintiff's proposed classes lack commonality. The Court agrees.

Commonality requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). While this seems simple, "[w]hat matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Any competent attorney can raise similar questions, but the answer to these questions must essentially "*resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Stukenberg*, 675 F.3d at 840 (emphasis in original). This serves the ultimate drive of the class action procedure: efficiency. If every individual plaintiff requires his or her own in-depth factual analysis, the purpose of the class action is defeated—rendering the litigation unruly and inefficient.

Plaintiffs present eight common questions of law and fact:[1]

---

[1] Plaintiffs' briefing initially presented ten common questions; however, two of them are inapplicable now as Plaintiffs' unjust enrichment claims were dismissed.

(1) Whether Capital Plus breached all class members' standard form Loan Documents;

(2) Whether Capital Plus's failure to fund these PPP loans also violated the SBA's funding rule and CPF's obligations to obtain and use advances it obtained from the PPPLF to fund PPP loans, be paid SBA fees only on funded loans, and report accurately to the SBA regarding PPP loan funding and PPP lending;

(3) Whether each Defendant procured fees for PPP loans that CPF did not make;

(4) Whether Crossroads controlled CPF;

(5) Whether Donnelly and Alpert controlled Crossroads and Capital Plus.

(6) Whether and, if so, how Plaintiffs and class members suffered damages as a result of Defendants' alleged misconduct and the proper measure of relief;

(7) As to the California Subclass, whether Defendants' misconduct violated the UCL again only in the alternative, to the extent that Plaintiffs' contract claims fail to provide adequate relief to the members of the California Subclass;

(8) As to the North Carolina Subclass, whether Defendants' misconduct violated the NCUDTPA.

ECF No. 68 at 20.

These questions boil down to one issue with commonality. The central question in this case—as Plaintiff notes—is whether CPF failed to fund Plaintiffs' loans or timely cancel them. ECF No. 75 at 2. The breach of contract and state-law claims hinge on this question. If Defendants were indeed required to cancel every unfunded loan within twenty days, the reasons behind their failure to fund do not matter— thus resolving Plaintiffs' claims in one stroke.

This is Plaintiffs' exact argument. They claim that if their loans had problems, Capital Plus should not have issued an SBA number to begin with or should have reported cancelation within twenty calendar days in line with the federal regulations. To back this up, Plaintiffs bring

affidavits from multiple "experts" on PPP loan funding.[2] These experts claim that any failure to cancel a loan "for whatever reason" within twenty days of issuance of an SBA number would "be inconsistent with the program … [and] in violation of the rules." ECF No. 69 at 82. But while this reading of the provision would solve the commonality issue here, the Court disagrees with this interpretation.

The provision at issue states that "[l]oans for which funds have not been disbursed *because a borrower has not submitted required loan documentation* within 20 calendar days of loan approval shall be cancelled by the lender." 86 FR 3692, 3710 (emphasis added). The plain text of this provision only applies to one narrow situation: when a borrower fails to submit "required documentation." *Id.* The provision does not address whether cancelation is required if Plaintiffs filled out the documentation incorrectly or if Plaintiffs' bank bounced the funds. Indeed, there are many possibilities where loans might remain unfunded that fall outside of this narrow statutory provision. And looking to the class representatives' individual cases, this appears to be a substantial part of what happened—evidencing the difficulties with certifying this class. The Lead Plaintiffs each fall into different categories as to why they never received payment—all outside the narrow twenty-day-cancelation provision. The Court addresses the individual situation of each Lead Plaintiff in turn.

**Pinkney**: The only Plaintiff that appears to fall close to the statutory cancelation circumstance is Pinkney, whose loans were allegedly canceled due to "inconsistent" paperwork and suspected fraud. ECF No. 74 at 12. Pinkney does not dispute that his loan was canceled but insists that it was canceled outside the 20-day window and after the PPP program ended—leaving him with no recourse to obtain another loan. ECF No. 75 at 4.

---

[2] The Court is allowed to consider and investigate facts at the class certification stage. *See Chavez*, 957 F.3d at 546. The Court is not considering this testimony in an "expert" capacity, but only in a way to better understand certain issues of the case which squarely rest on the SBA lending rules. Determining the correct procedure of the PPP loan process is at the core of this motion. Defendants Motion to Strike (ECF No. 71) is thus **DENIED**.

But "inconsistent" paperwork is different from incomplete paperwork. So Pinkney's situation could still fall outside the statutory and contractual requirement to cancel the loan within twenty days. And the provision at issue does not provide for timelines of cancelation for suspected fraud.

**Greathouse, Covarrubias, Sumrall, Myles, Pericho, and Mena**: These Plaintiffs experienced different issue with their loans. Capital Plus claims that their funds were disbursed, but that the individuals' banks returned the funds for different reasons unique to each Plaintiff.[3] ECF No. 74 at 9–11. Plaintiffs do not dispute this fact. Defendants claim that these Plaintiffs were denied diligence review after bank rejection because they "failed to submit requested materials or because the materials they submitted did not resolve the issues identified." ECF No. 73 at 10. Only Plaintiff Sumrall's loan went through this enhanced review process after submitting requested materials.[4] *Id.*

Again, this situation is not considered in the regulation at issue. The PPP program issued no guidance or duty on how to handle bank rejections.

**Smith**: Smith's loan was allegedly disbursed by Capital Plus to his bank by an ACH payment. ECF No. 74 at 15. Capital Plus alleges that the funds were never returned from the bank and are probably in limbo somewhere outside of its realm of statutory responsibility. *Id.* This is yet

---

[3] Greathouse's bank rejected the loan listing ACH rejection code R23, "Credit Entry Refused by Receiver." ECF No. 74 at 10.

Covarrubias's bank rejected the loan listing ACH rejection code R02, "Account Closed." *Id.* Myles's bank rejected the loan listing ACH rejection code R03, "No Account/Unable to Locate Account." *Id.*

Pericho's bank rejected the loan listing ACH rejection code R03, "No Account/Unable to Locate Account." *Id.* at 11.

Mena's bank rejected the loan listing ACH rejection code R17, "File Record Edit Criteria" with the additional notation "QUESTIONABLE." *Id.*

[4] Sumrall's bank first rejected the loan listing ACH rejection code R16, "Account Frozen/Entry Refused per OFAC Instructions." *Id.* After providing another account number through enhanced due diligence review Sumrall's bank again rejected the loan listing ACH rejection code R02, "Account Closed." *Id.*

another area that likely falls outside the considerations of the contract and the regulation at hand.

The varying circumstances of Lead Plaintiffs' loan processes show that many situations could cause a funding failure after an SBA number was assigned.[5] And the specific failures applicable to all lead Plaintiffs likely fall out of the statutory and contractual obligation to "cancel" the loan within twenty days. This makes certifying a class for a breach of contract nearly impossible given the many possible answers that resolve the question "why were the funds not disbursed?"

The expansive state claims under the UCL and the NCDUTPA—though broader in their application—also offer little in shoring up the commonality question. Lead Plaintiffs present multiple fact patterns that, taken individually, could be unfair, illegal, or deceptive. But, as evidenced by their individual circumstances, the answers to the central questions once again vary widely. These differing answers do not lend well to the adjudication of any of these claims by class action.

Commonality is not present.

3. Typicality is not met.

Defendants next assert—for similar reasons—that typicality is not met. The Court agrees.

The test of typicality concerns three questions: (1) whether other members have the same or similar injury, (2) whether the action is based on conduct which is not unique to the named plaintiffs, and (3) whether other class members have been injured by the same course of conduct. *Miller v. Grand Canyon Univ., Inc.*, 540 F. Supp. 3d 625, 634–35 (N.D. Tex. 2021) (citations omitted). In short, "class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.*; *see also Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex.

---

[5] Plaintiff does not object or dispute the facts provided by Defendants regarding each Lead Plaintiff's individual loan circumstances. ECF No. 75 at 4. But even if they did dispute them or the facts were not individually true, the possibility of the many avenues presented still prevents this Court from finding common answers to the questions provided under a commonality analysis.

1999) ("Where unique defenses against a named plaintiff exist, the Court must consider the potential danger that the attention to this individual defense might harm the class."). For this reason, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 350 n.5.

Plaintiffs argue that typicality is met because all SBA number recipients signed identical loan packages with Capital Plus leaving them with the same injuries when Capital Plus failed to fund them. While this satisfies the first question of similar injury, Plaintiffs claims are lacking in the next two questions.

As shown in the Court's discussion of commonality, Defendants assert different factual defenses for nearly every Lead Plaintiff. ECF No. 74 at 9–12. And many of these factual scenarios likely fall outside the statutory and contractual duties of the PPP loans at issue. The Plaintiffs' differing circumstances thus implicate different defenses—a central concern of typicality. Each Plaintiff is left fending off divergent factual defenses that they must rebut to succeed on their claims—taking clear precedence over the scenarios of absent class members. Because of this, the action is based on conduct that is unique to each named Plaintiff. And because the Lead Plaintiffs' circumstances are so factually diverse, it is unknown how many other changed circumstances might exist with absent class members.

Typicality is not present.

*   *   *

Because numerosity, commonality, and typicality are not met, Plaintiffs' motion for class certification fails under Rule 23(a)(2).[6] The Court next addresses Defendants' arguments under Rule 23(b)(3).

## C. Rule 23(b)(3) Requirements

Defendants next argue that Plaintiffs' class certification also fails under Rule 23(b)(3). FED. R. CIV. P. 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over

---

[6] Seeing that Plaintiffs motion fails under the first three central requirements of Rule 23(a)(2), the Court finds it unnecessary to address the adequacy of representation present in this case.

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

For the following reasons, the Court finds that the Rule 23(b)(3) requirements are not met.

### 1. Common questions of fact do not predominate.

Defendants assert that common questions of fact do not predominate as required by Rule 23(b)(3). The Court agrees.

Factual predominance requires that "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020). As with commonality and typicality "the risk of voluminous and individualized extrinsic proof defeating predominance runs particularly high where a defendant raises substantial affirmative defenses." *Id.* at 256.

For the same reasons that prevent this Court from finding commonality or typicality, Plaintiffs' claims also fail to satisfy Rule 23(b)(3) as common questions of fact do not predominate over individualized questions in this proposed class. As evidenced above, the reasons for why a loan was not funded is an individualized affair that presents too many unique scenarios to properly be considered under a class action. ECF No. 74 at 9–12. And because the central identity of this entire case rests on this question, the lack of predomination of common facts is fatal under Rule 23(a)(3).

Factual predominance is not present.

### 2. A class action is not a superior method of adjudicating this case.

Defendants last argue that—because of the divergent factual scenarios of the lead and potential Plaintiffs—a class action is not the best method for adjudicating this case. They are correct.

"Superiority" requires that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This involves a "fact-specific

analysis and will vary depending on the circumstances of any given case," *Madison v. Chalmette Refin., LLC*, 637 F.3d 551, 555 (5th Cir. 2011). The fact specific inquiry requires a court to assess "the relative advantages of alternative procedures." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016).

Given the divergent factual scenarios present in this case, a class action appears unmanageable. ECF No. 74 at 9–12. At risk of sounding repetitive, the many circumstances that might lead to an unfunded loan would result in an ununiform and chaotic class. *Id.* Thus, "the principal purposes of the class-action procedure—promotion of efficiency and economy of litigation—would thereby be frustrated." *Crown*, 462 U.S. at 349. As a result, individual claims—where each Plaintiff can argue the specific facts of their unfunded loans—are a better method of remedying the alleged wrongs present in this case.

\*    \*    \*

Because common questions of fact do not predominate and a class action in not a superior method of adjudicating this case, Plaintiffs' motion for class certification fails under Rule 23(b)(3) requirements.[7]

## ORDER

For the reasons stated above, The Court **DENIES** Plaintiffs' Motion for Class Certification. ECF No. 67.

**SO ORDERED** on this **6th day of September 2023.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

---

[7] Seeing that Plaintiffs motion clearly fails under these central requirements of Rule 23(b)(3), the Court finds it unnecessary to address the other 23(b)(3) issues raised by Defendants.